My name is Bo Brindley and I represent the defendant appellant, Joel Smithers. In Ruan versus United States, the Supreme Court plainly found that the knowingly or intentionally mens rea applies to the authorization language in Section 841. A registered practitioner like Dr. Smithers cannot be found guilty of violating Section 841 unless the jury makes a finding that the doctor subjectively knew he was unauthorized to write the prescription. It is a subjective question. The jury instructions in this case told the jury that Dr. Smithers was guilty if he acted outside the bounds of medicine, which was defined as acting outside of the proper standards of professional practice. There was no mens rea. If he acted outside the proper standards of medical practice and believed he was authorized to do so, it didn't matter, he was still guilty. If he didn't know he was operating outside the proper standards of medical practice but did, he was guilty. And that is the opposite of what Ruan allows. This is the very thing that Ruan sought to change. The government has tried to argue that somehow the total absence of mens rea from the critical third element, which is all that was contested in this case, the whole case was the third element, can be fixed by first reference to a general aiding and abetting instruction. I want to set that aside pretty quickly because every bit of argument in this case was that Dr. Smithers was the principal. Nobody even suggested aiding and abetting made any sense. So the idea that the jury would ignore the substantive elements instruction and come up with some aiding and abetting higher degree of mens rea that it doesn't even say makes no sense. There is no case, Hansen or otherwise, that says you can supply an omitted element of mens rea from the substantive elements instruction on the offense by a general aiding and abetting instruction. It simply does not exist. It does not make sense and the government must stretch to that because it's pretty clear this case needs to be reversed so a properly instructed jury can consider Dr. Smithers' positions. The willful blindness instruction in this case is also unavailing. All the willful blindness instruction in this case said was that the jury could find knowledge if there was a high probability in the evidence that the patients were abusing their medications. Unlike the Anderson case which had a willful blindness instruction that went to knowledge of acting outside the course or for no legitimate medical purpose and right to the knowledge from the elements. This willful blindness instruction didn't do that. The elements instruction did not tell the jury that to find guilt they would have to find that Dr. Smithers knew that his patients were abusing or even that the patients were abusing at all. If he acted outside the bounds of medical practice, outside the norms, he's guilty. That's what they were told. So nothing about the willful blindness makes any difference. Knowledge wasn't applied to the third element. A conscientious jury wouldn't even have thought about that. And furthermore, under Ruan, a doctor who sincerely believes he's authorized to prescribe for patients, even if he knows they abuse to some degree or not, is not guilty. The instructions this jury was given would not allow for that finding. So willful blindness doesn't solve the problem of the omitted element. Finally, the government's last effort to say that somehow the instructions can be salvaged is to talk about the good faith portion. But first and foremost, Ruan explicitly denounced good faith as a proxy for knowledge. That happened in the Supreme Court's decision where they talk about good faith and honest effort and all of those standards being insufficient. It happened in Ruan itself, where they said that good faith is no proxy for knowledge. It happened in CON 2. I meant Ruan 2, the remand when I say that. In CON 2, in the Tenth Circuit, they make the same finding that any statement about good faith and honest efforts doesn't fix the problem because the jury didn't make a finding that the practitioner knew he was not authorized to prescribe. The good faith instruction in this case explicitly said this is an objective question, not subjective. It explicitly said that a doctor's own views don't establish the bounds of medical practice, even if he believes it's proper. Can I ask you a question about that? Yes. So, I think I understand the argument when the court says this is an objective test and not a subjective test. The challenge is the previous sentence refers to the honest belief. And so, and then the subsequent sentence refers, I think arguably at least, to both a subjective and an objective component here, right? And so what the court seems to be saying is that there has to be an honest belief subjectively, but the medical standards are objective, right? It doesn't seem to be saying, because otherwise honest belief doesn't make any sense in the way you're reading the instructions, right? Honest belief is by definition subjective. Honest belief is a subjective term. I agree with that. But the court in Ruan found that this very kind of statement, the government's proposed standard in Ruan was that the doctor... No, no, but I'm just asking how you're reading it, right? So I'm not trying to necessarily... Next step, we'll talk about Ruan. First step is you say, this is just objective, right? But the instruction itself is not objective, right? The instruction itself says that we're looking for an honest belief. We're asking whether the physician substitutes his view, right? Subjective as compared to the objectively medical reasonable. It's doing both. It's an objective and subjective. There is this objective and subjective component to it. I don't deny that. Ruan didn't deny that. But the problem is, Ruan says that even if the standard, which is far more generous, if the standard that was proposed there was that the doctor only has to make an honest effort to try to apply what other doctors might view as medical care full stop, that's not sufficient. And if that's not sufficient, this isn't sufficient. This thing went on to say that he can't... his personal views don't establish the bounds of medical practice. And beyond that it says, even if he believes they are proper. Well, Ruan says that if he subjectively believes he's authorized to do this for his patients, concurrence and majority say the same thing. If he's authorized, in his mind, believes he can do this to help his patients' malady, then he can know he's acting outside of the norms. And of course that makes sense. Doctors do this all the time. That's what the Supreme Court's worried about in Ruan. Doctors have to decide, I'm going to act outside the norms to address a problem that might fix you. Specifically, it's different than what other people think. I'm going to use a purpose that most of my colleagues think is illegitimate. I think it's going to help your problem. And if they sincerely believe that, Ruan says they are not guilty. That is why in KANTU all of the accounts were reversed for this very same reason. And so, there's no way to salvage the instructions given what Ruan said, given what KANTU has said, given what Ruan too has said. Now, the government cited the Anderson case, but that's about the willful blindness that doesn't help. And on top of that, Anderson isn't direct odds with KANTU. And we would submit, based on the dissent in Anderson, we would submit that KANTU is much more accurate in its reading of Ruan than Anderson. Ultimately, there's one charge here that's not a distribution charge. It's the Stash House count. That the government talks about. And they try to say somehow that's exempt because it talks about the terms unlawful distribution. But to figure out what the unlawful distribution definition for Dr. Smithers is, there's only one place the jury can go, and that's to instruction 20, which omitted the mens rea element that gives rise to the problem. The Stash House charge must fall with the distribution charges here, just as the conspiracy and the continuing criminal enterprise charges had to fall in KANTU. It's the exact same. Can you help me? Your argument, I guess there may be two ways to read Ruan. One of which requires knowledge of, you know, what we might, let's call it the bounds of medical practice, right? And would that be sufficient in your mind? So if, for example, the doctor under Ruan, the doctor said, I know what the bounds of reasonable practice are, but I'm going to go outside of them because I think opioids cure COVID. Right? And let's assume, I don't know anything about this, but let's assume nobody else, no reasonable medical doctor believes that oxy cures COVID. But he's decided in his honest belief that it does. Okay, would that suffice under Ruan? Put the structure on. He's not guilty. If his belief is sincere, Ruan contains that whole discussion of this problem of the outrageous doctor is going to get away with it. And what they say is we've said time and time again, the more his pronounced belief diverges from what the standards are, the higher degree of the jury's not going to believe he's earnest. But if he is and they believe him, he's not guilty, no matter how different it is from the standards. That's what Ruan explicitly made the decision to say. And it is our view. And I mean, you also think, okay, so do you also think that Ruan tells us in this scenario, the sort of ignorant doctor, right? So the doctor who doesn't know what reasonable medical standards would provide. And so provides the, you know, oxy to cure COVID without knowledge of what the standards are. Does Ruan address that charge too? Absolutely. That's clear. If he doesn't know he's outside the proper practice standards, he's not guilty of the crime. Now, there are other penalties for him. He can lose his license. There's a whole process for them to take his DEA registration away. But for a crime, we have a high bar. That's what they're talking about. And for a crime, he has to know not just that he's outside the bounds of practice. He has to know that he's not authorized to do that. That's why the Supreme Court spent so much time on liberata, which says that when authorization is the distinguishing factor between guilt and innocence, then the defendant must know that he lacks authorization under the law. That's what liberata says. That's what the Supreme Court cites when they say ultimately the finding must be made that the defendant knew or intended he was acting in an unauthorized manner. And the instruction in this case didn't do any of that. He could have not known and been guilty. He could have known and earnestly believed that he was authorized to do it, still guilty. It's directly in contradiction of RUA and harmless error. And is the, just a question, and then for that purposes, is a burden on the government to make that affirmative finding for purposes of the... Which finding? That he knew for the jury. Absolutely. If, once it's established that he was registered under the DEA, then as RUA indicates, the burden is on the government to prove that he knew that he was unauthorized to write the prescriptions or distribute the drugs. Absolutely, that's their burden. That is the element of defense. The offense. That is the thing that decides guilt from innocence. His subjective belief about that which he was authorized to do. And I think what's, what's most important, then I'll talk about harmless error just for a second. But what I think, what's most important here, we have a failure here, the line of cases here in the Fourth Circuit under Hurwitz has been reversed by RUA. And the new standard needs to be announced and this is the case where it can happen. And I think what it has to include, at the very least, as CON 2 suggests, and as RUA suggests, are at least two things. One, an element that says that the prescription was unauthorized. That's the actus reus. That would be an objective question. And then a following element. What do they mean by unauthorized there? So, like, this is, this is what, and I want to talk to your colleague about this too. RUA, at times, there's not total clarity. So, unauthorized is, which is sort of what the court comes back to in RUA, might be read as sort of a reference back to, like, what is, you know, reasonable medical practice. How do you interpret unauthorized? I mean, the court's sort of key line is they had to know or intend that his conduct was unauthorized. And yet, what unauthorized means seems a little, a little hard. I think what, my view of what it means is what Lipperana says it means. It means that he believed he was under authorized under the law to write the prescriptions. That's what it has to mean. Full stop for the defendant. It's no more complicated than that. Now, what it does not mean. So, then, what would, what would be authorized under the law in your view? So, what, what is, well, what, I guess that, that just begs the question, right? If he, no, no, it doesn't. Because it's like Justice Alito said in the concurrence. If he believes that he's prescribing to address a malady, acting for a medical purpose, he's authorized. That's the clearest and cleanest way to say it. If he's acting to treat a malady, he's authorized. If he's acting to do something else, like if he's just trying to hustle pills, make money and he doesn't have any interest or belief that the person is really in pain, he knows he's unauthorized. He knows the law doesn't allow that because he's not acting to treat a malady. I think that's the cleanest way to look at it. But in terms of elements, and I think that's how it should be defined, in terms of what defines an authorized prescription. It's a prescription written by the doctor's subjective purpose and belief if they address a malady suffered by the patient. And the two elements that are necessary in addition to that definition are one, that the prescription was unauthorized and that would go to the medical standards and all of that. And two, that the doctor knew or intended that he was unauthorized to write it, that he lacked the legal authorization to do what he did. Now, I think it's important also to remember that the doctor could know that he's outside of what the normal practices are. He couldn't know he's outside of what most people deem legitimate procedures, but if he earnestly believes that he has the authorization to do that to suit his patient's need, he is not guilty of a crime that perhaps has to face some other penalties within his profession. Harmless error in this case is simple. It just can't be. Dr. Joel Smithers got on the witness stand and testified in detail that he believed what he did was right. And given that testimony, if he was given the proper standard under Ruan, a jury could have believed him and acquitted him. Under the standard given at his trial, the jury could believe him and believe still that he had to be found guilty because he did act outside the bounds of medical practice because he diverged from proper standards as they were defined by the expert. And under that circumstance, there's no way for this court to make a credibility finding about Dr. Smithers without it becoming the very directed verdict that Sullivan and Netter say you can't do. When it's omitted mens rea element, it's harmful, particularly when the defendant got up there and stated his case for why he believed he was doing the right thing. And so we would ask that all of the counts be reversed and remanded for trial and for correction. Thank you. Thank you. Mr. Brimley. Mr. Ruan. May it please the court, Kegel, Juham for the United States. If I may begin with a few points that I think address some of the questions that have already been raised here today. I want to start with the count two point and turn to Judge Benjamin. I think a question you were getting at about the standard of review on harmlessness or plain error and also have a conversation, Judge Richardson, about the meaning of Ruan. The easiest and a legally correct way to affirm this appeal is to look at count two and affirm because this court, I'm sorry, the jury already found everything it already needed to find and it did that by the following. We know this jury found that Dr. Smithers' prescriptions were in fact medically legitimate and you combine that with count two, which required the jury to find. Legitimate or illegitimate? Illegitimate. We know that they found they were in fact medically illegitimate and in count two, the jury was instructed to convict on count two, you have to find that he ran his clinic for the express purpose of doing unlawful distributions and that jury found just that, that his express purpose was to write unlawful, medically illegitimate. Which instruction is that and say it again? That's the count two instruction, Your Honor, on the maintaining a place count. So and this is our first harmless error argument. It's assumed harmless error. So we know that this jury was put, it was put to them about his purpose and his intent and I would add to the court, if you want to be certain of this point, you can look at JA 9672. That's closing argument of the defendant where the defendant says, ladies and gentlemen of the jury, you should have quit on count two, the maintaining a place because my client didn't have the purpose of writing unlawful distributions and the way you know that is because he testified and said, I thought I was helping these people. I thought they had a legitimate, a legitimate problem. This jury necessarily rejected that argument and had to necessarily reject that argument to convict on count two. So that's the easiest way to not have to deal with the thorny issues of the instructions and the Ruan is proceed straight to assumed harmless error. Of course, to your question, Judge Benjamin, Ruan, it is an element. I understood maybe you were suggesting, are we on harmless error review or plain error review? And the government maintains, of course, that we're on plain error review because there's never an objection below that says, look, there's a missing element here. It's just, it's not there. And of course, the beginning of instruction number four. But he kind of argues this disjunctive, conjunctive issue. Right? In his opening brief. That's where you're, yes. So he argues that in his opening brief. But I would say to the court, that is a separate question. And here's how you can know it's a separate question. Go to the cert petition in Kahn that the Supreme Court granted. The first question presented in Kahn was the knowledge issue that Ruan actually decided. The third question presented in Kahn, that discourse was originally state, case was originally state for, was the and or disjunctive question. That's about the actus reus of legitimacy. That's the question that the Supreme Court did not reach. And Mr. Brindley himself authored that petition in Kahn. And so it's not the same issue that he raised in his opening brief, the CNTR issue. It's not the same issue. And that goes to the waiver argument, Judge Benjamin. But I'm talking about even in the- But then I think he also argues that the futility argument, and cites White, U.S. White, which is a Fourth Circuit case, that he can't be required to argue that element because Ruan had not been decided yet. And that's just not the law, Your Honor. That's why we have preservation rules. You have to do two things to get de novo review on appeal. You have to preserve in the district court and you have to preserve in your opening brief. And you have to do that even if it's contrary to the existing precedent. So take Rahif, for instance. That's a case where the circuits all said, you know, you don't have to have knowledge for a 922-G. Well, someone eventually did it the right way. They preserved in both the district court and in the appellate court that argument and took it to the Supreme Court. And here we know that Smithers had just an and-or in his opening brief. And he can't point to anywhere in the instructions or in the jury charge at the district court where he said, you know what? I see there's three elements on the 841 counts. There should be a fourth element here that he had to know that it was illegitimate. Judge Richardson, if I may turn to you. Can I pause before you come to my argument about the first one? I'm going to go back to the count two point. So why when I read the count two instructions, right, which is for the purpose of unlawfully distributing, right, why don't I read that as being the sort of incorporation of the standard, right, in counts three through 800 and whatever it is, where it's unlawful if he did what's alleged in count, is it count three is one of the? Yes, it's three through 800 and 62. Right. So in count three, it's unlawful. So if he did it for the purpose of creating an unlawful, why doesn't that get you there? I think I know what your answer is, but tell me. It does and it actually comports with what the proper understanding of Ruan is. Because what Ruan says is, yes, you have to know it's unauthorized, but Ruan is very clear that that's pegged to the regulation, 130604 and the meaning of that regulation that it's not for legitimate medical purpose and the usual course of the professional practice. So there's one element. Is it in fact violating the reg, right? Is it medically illegitimate? And then there's the aspect of did he know that it's in fact medically illegitimate? So this jury on the substantive distribution counts on element three was given that first question. These are in fact medically illegitimate. You can't cross-reference the elements of the accounts. And that's what it seems as if you're trying to do with the 11 and the charges, right? You can in a harm, and this is this court's opinion in Collins. It's called a necessary finding harmlessness, Your Honor. So if we know that this jury... You're conceding. I mean, I don't mean you're conceding. But for purposes of this argument, we're assuming that three through 800 were improper. Correct. But we know that there was purpose intent under count two. Correct. So that means count two stands, and which is a separate question. And then you're making the additional argument because the jury had to find purpose for count two, they would have found purpose had they been properly instructed in counts three through 865. That's right. And just to follow up, though, but count, but your instruction in 11 says, instructs the jury that they can't cross-reference the counts. So I'm just trying to see how you're getting there when the judge instructed the jury that they couldn't cross-reference. And let me be very... If you look at instruction 11. I've got it here exactly, Your Honor. I think I can clarify the unclarity. So count 11 says, and this is the law, you have to consider each count individually, okay? So the jury did that for 859 distribution counts. And for each one, we know that the jury found that each of his prescriptions were medically illegitimate. Okay, that's not in dispute, that the jury found that on element three. So then the jury also has to find in count two, okay, what's the purpose of him running his clinic? Was it to do medicine? No, they found and were instructed to find, to convict on count two, you have to find that he ran his clinic for the express purpose, predominant purpose, which is actually more than intent, for writing unlawful distributions. Well, what was the case about? It was about the unlawful distributions that everything was being put on. So I want to be very clear. We're not saying that the instructions told the jury to do this and that go add two and two together, but we can know from what the jury actually found on the substantive distribution counts, from what they actually found his purpose was on the count two count, that this jury actually made these findings. So we would be saying in this, for this argument, the instructions were in error. District court, don't do these again. You need to make sure that it includes knowingly on count three. But that error is harmless because the jury had to have found intent, not just knowledge, but intent in order to convict on count two. Therefore, for harmless error purposes, we can show that intent was found by the jury. And so whatever failure to instruct on knowledge is in effect cured on harmless error. I think that's the core argument you're on. And again, I would reemphasize. But how can, if the judge instructed the jury on three through 800 and whatever, that you can't look to count two and the elements of count two, then how can the jury, how could the jury have considered that when they look at three through 800 plus? Because what the instruction 11 says, Your Honor, is because you find him guilty on count 313, which is to Bobby Hubbard, for instance, after he was already told Bobby Hubbard is diverting his medication and he still kept writing him prescriptions anyway. Just because you convict on count 313, don't assume you should also find him guilty.  And so I grant you that that's the instruction. I grant you that that's what the jury did. What we're looking at is what did the jury find individually on each count and how does that carry? Your point for this argument is it would have been error for the jury to consider the count two instruction for count 313, right? That's right. Not that it would be error for this court  to consider the findings that are made on disparate counts. That's right, Your Honor. Instruction 11 doesn't limit this court. It limits the jury. Yes, in deciding guilt. When this court is looking at what did the jury actually find and does that satisfy the Collins test for harmless error? Yes, that's the argument. And again, I want to reemphasize JA 9672 where the argument was acquit on count two for the purpose of unlawfully distributing controlled substances because you should believe him that he testified he was doing this and believe these people needed help. And the jury necessarily rejected that argument both as a matter of fact and as a matter of law in reaching its verdict on count two. If I would also talk about Ruan a little bit, Your Honor. I think it's two points I want to make. Their brief says a couple of times that this is a specific intent requirement. Nowhere are you going to find an 841 or in Ruan that phrase. That is not the law. It is not a specific intent requirement. It is not a willfulness requirement. It is a knowledge requirement and the question is knowledge of what? And the Supreme Court says we are talking about what authorization is is writing prescriptions that are for a legitimate medical purpose in the usual course of the professional practice. So if someone flunks that then their prescription is unauthorized. In fact, okay, that's element three. And if they know they flunked that standard then they are guilty. And that is all that Ruan requires. So you disagree with his reading of Ruan? Totally, yes. Right. And your point is that under Ruan if I have knowledge of what the reasonable medical bounds are and I go outside of those bounds earnestly even but knowingly and I prescribe oxy to cure COVID or whatever it is that I violated the statute. And I think the Supreme Court says that because it says, look, what is still the medical practice is an objective standard, right? That is not and this is his argument I think totally warps that point. Turns it into a specific intent crime. That's true too. But what Ruan does not say that a doctor's subjective beliefs warp the objective reality of what the medical profession is. What it says is if he honestly believed that this was the objective reality of what the medical profession is and the jury believes that then they should have quit him. But it doesn't say that just because the doctor believes it therefore the medical profession deems it as objectively the medical profession. And so we think that's a really important point that and I think Ajayi from the the Fifth Circuit makes this point and says, look, the doctor has to know that he's writing illegitimate prescriptions. So may I also add to my friend on the By illegitimate you mean outside the bounds of medical practice. Yes, it's not illegitimate in the sense of for a bad motive, right? Illegitimate in the terms of it's outside of medical practice, right? That is even if I was prescribing oxy for COVID at a clinic for free where I had no bad motives that still would violate the statute. Yes, I think when you're saying bad motives, I mean here we know there was a bad motive. But I'm asking the Ruan question. Yeah. I mean, yes, that's I think that that's right. Your Honor, if I'm understanding your point correctly, I think I also want to talk about Liparada which my friend today here mentioned Before you get to that. Yes. Have you finished with Judge Richardson's question? I wanted to answer about Liparada and answer his first. Have you finished with his question? I have not quite yet, Your Honor. Okay, make sure you finish with his question first. Go ahead. Okay. But it better be his question. His question is about Ruan and Liparada which Ruan cites in footnote nine says the authorization food stamps. It's not a knowledge of the law requirement. It's not a willfulness. And so it's the same point here. Yes, Judge Gregory. Does instruction number 20 relate to the distribution that you're trying to assume, you know, you're trying to salvage this by saying your count to be enough. But does instruction 20 relate to count to? Yes, it does, Your Honor. But doesn't it say there that he can be guilty by showing one. He knew the drug was controlled substance. I think most physicians know that oxy is a controlled substance, right? Two, normally dispense and distribute cause to be dispensing the controlled substance. Well, if you prescribe it legally or illegally, you are dispensing it, correct? But then your third one you says acted without a legitimate medical purpose or disjunctive beyond the bounds of medical practice. Doesn't that say that if it's beyond the bounds of medical practice, no matter what your belief was about it, you're guilty. You don't get away from the problem or realize, do you, on the count to? You don't if you read that instruction in isolation. In isolation, I'm reading exactly what it says. I mean, that's what jurors do. I mean, we're not, they read it exactly what it says. One, two, three. Those are the elements. And I can do it if he acted without a legitimate, legitimate would seem to go to some kind of subjective aspect of it, legitimate purpose or beyond the bounds. So if you prove it's beyond the bounds of medical practice, then he would be guilty. That's like, that's what Ruel was trying to do, separate criminal cases from medical malpractice. Every medical malpractice case, none of them can be proven unless it's out beyond the bounds of medical practice. Meaning since you did something that physicians in your field would not have done, you can't get away from it because you still have this, you know, it's in the law. Does it not, would you answer that? How do you get away from the problem? I'm happy to explain, Your Honor. I totally agree that the first paragraph of paragraph 20 is wrong and should have a fourth element there. Okay, but there's two points about that. One is, where's the objection below? There wasn't one. We're on plain air review. Two is, this court's opinion in Savage, for instance, which I think you were on that panel, Judge Gregory, talks about you have to look at the instructions as a whole. So these are not best practices instructions. Agree with that totally. But you look, for instance, at instructions number 15 and 19, which talk about knowingly and then knowingly under Rahif we know would be read naturally by the jury is going all the way through. Or look at instruction 19, which talks about knowingly distribute, knowing it's a controlled substance and did so, which is carrying over that knowingly, not for a legitimate medical purpose. So I think, look, we understand that the Ruan question on these instructions of whether there was a Ruan error, it's a hard question. But they permeated. They permeated. This is the most important part. This is the element part. This is what jurors are able to, at least from an analytical standpoint, say, well, what do we have to prove? One, two, three. And it lays it out right here. And it says we can do it. And it's beyond the bounds of medical practice. That's enough. And I think, Your Honor, as to that question again... Because didn't you have experts to testify to what, how he was running his practice was beyond, right? Oh, yes. And it was under a better expert testimony, yes. Then that's all they would need. No matter what his subjective thought was, no matter how much he thought I was really trying to do this, the purpose would have nothing to do with it. It's totally, as long as it's beyond the bounds of medical practice, he's guilty. That's what you told me to do. Your Honor, and then later in instruction in 20 on the next page, it talks about if he had the good intentions and the honest belief that he was attempting to conform to those medical standards, then you should, and this is the end of 1260AA in the Joint Appendix. If you find that he acted in good faith, that is, if you find that he acted with good intentions and his honest belief, and it's not his burden to prove that, the jury was told that too, then you must find the defendant not guilty. This jury knew that if it thought that he had the beliefs and intentions to comply with the medical profession, then it was to find him not guilty. It did not find him not guilty. And just to understand the framework, even were I to agree, or maybe let's say even since I agree with Judge Gregory on this point, what that would show us is that there was an instructional error on And then we would have to address the question of count two specifically, and then whether the count two survives, and then whether count two purpose inquiry renders that instructional error harmless. That would be the analytical approach, Your Honor. And let me also just say on count two, there was never any instruction or any objection below to count two. There was never any discussion in the opening brief of count two. We think that count two has a swath of preservation, waiver, plain error review problems, and that should be affirmed. And we also think that the instructions, your review here, you know, there's the legal question of did this comply with Ruan, but it's an important question of was it preserved below or not? And we think we're on plain error review. If we are, then the government easily wins on the third and fourth prongs. And if we're not, we win because of the count two argument. And if I could take my last 40 seconds and also talk about why the government would win under the no rational basis test. And we have two great cases from this court about omitted c-inter elements, and that is McFadden and White. And both of those cases say when you have the defendant's own handwriting, his own text messages, his own recorded statements, and they are clear, and they are unambiguous, and they say things like, I need a good effing criminal defense lawyer to help me deal with major drug cases, and I need to keep the DEA and the State Board of Attorney's to decide that he lied on the stand. I mean, right? I mean, I take his argument to be for us to find that point, we would have to find that he was dishonest on the stand, and that's a hard thing for us to do. He never, ever, I mean, he testified, he could have said, here's what I actually meant by these text messages. He never disputed the meaning of those text messages. He never, I mean, he could have done it. And it's only in a supplemental reprobate where we get some, you know, kind of effort to interpret these. So we think, ultimately, the rational juror test, Your Honor, to your question, I'm sorry, I'm way over time, may I finish? Please. The rational juror test requires the court to look at the mountain of evidence that this case and the court had before, and really, it's a mountain of uncontroverted evidence with his say-so, a guy who had already lied to get out of a traffic stop by abusing his authority as a doctor. So there's just no, a rational juror is not a credulous juror, and this court should know that. But then you go on further in the instruction, you said, this is an objective test and not a subjective one, not subjective. In other words, a physician cannot substitute his own views, and views, of course, would be honest view. I really thought I was doing the right thing, views, plural, of what is good medical practice in place of generally accepted norms, simply because he believes it proper. That's telling him that he can't substitute it, no matter what he might believe. So it goes back to the saying, when you further explain three, it's the same thing. You said, the bounds of medical practice, the bounds are set, so your belief can't go beyond that. That's what you told him even further. I mean, I don't know why we're trying to save something. I mean, the whole idea is that, you know, you're trying to shoehorn a way to make these instructions that are against what the Supreme Court said, in large, in large manners. Well, we can find one here, and that would have cured the whole thing, because that seemed to, but even in those instructions, you're clearly saying it is not subjective. It's objective, and a physician cannot change this, no matter what he believes or she believes, if it's not the standard that's normally accepted, and that's medical malpractice. That's exactly, is it beyond the medical accepted practice? And here, you put this together. I don't, no matter what you say, so he testified, but oh, that's phenomenal, because the jurors said, well, we don't have to listen to you, because this has already been established that it's beyond the medical practice and what's accepted, and that meets all three. So I don't see how you can say it's revived somehow, because they can find something, and most of these things here, I mean, the judges read them off, they're like a little novel, you know, you just go off and pervert, pervert, pervert, but you look at it, that's, I don't see how that, you can say that that's not infected, you know, this whole thing. And now, let me say one more question I want you to address. Eight hundred and what, sixty-two counts? Correct. He only looked at about twenty-nine charts. What about the others? He didn't even put any evidence on it at all, the jurors didn't, nothing, right? Respectfully, Your Honor, that is not correct. It's not correct? You talked about them all, all? We did not, there is no requirement, we did, we did not. There's no requirement to do what? There's no requirement to orally talk about at trial, in the testimony, every count. But you put the counts in, you don't have enough time to talk about each count? Why don't you just limit it to the ones you had time to talk about? See, that's the whole problem. You said that we don't have to talk about all of them, why don't you charge all of them? Why do we charge all of them? Yeah, and you don't, but you, and you don't have time to talk about them, so the jurors can look and see whether or not, he looked and see whether or not they were monitoring pain in this, in this case, in those things that, there are what, mountains of documents given to them? And we know, we know that this jury looked at them, actually. We know that they, every file. So I had a camera in there? Your Honor, there's a note. I would say, how do you know? Because the jury asked specifically to look at the patient files, when they were sent back to the jury. They asked to look at them, so you know they looked at them. Okay, Your Honor, you're. What'd you say? I like actual knowledge. Be careful how you say that, okay? I like actual knowledge that they knew at the time. Let's take the okay out, all right? Okay, I like knowledge. What did you say? What'd you say? Do you understand? Would you? I understand.  Okay, I'm sorry, Your Honor. You're doing it again. I'm happy to answer any questions that you may have, Your Honor. I think I'm finished. Okay. I'm sorry, Your Honor. Any further questions from the court? Thank you for your time. To begin with, this argument about Count Two. The argument is that because Count Two says he maintained his office for an unlawful purpose, somehow that'll fix everything. Well, does it start with why you think Count Two doesn't survive itself? Oh, it doesn't survive itself because the question, you said correctly, Judge, that the question is about intent. Intent to do what? And when we're getting to the question of what is unlawful distribution, how is the jury going to figure that out? There's only one place to look, and that's 20, because 20 starts out saying to convict a position of unlawfully dispensing or distributing. Right, but we add intentionality, right? So the point is, the problem with 20, and let's just assume it's a problem in 20, is that it lacks knowledge. Or intent. Right? But Rulon tells us knowledge is enough. Intent would surely be enough, but knowledge is enough, okay? And so the problem with 20 is it lacks knowledge. But Count Two tells us you have to intend, right? You have to intend what is in Count 20, right? Or Instruction 20, right? So that intent, you have to do it for the purpose of violating, and to do something for the purpose requires intentionality. That's just not what it says. It says for the purpose of unlawfully distributing. That's the word. But what is unlawfully distributing mean to these jurors? What is in Count 20? Excuse me, counsel. I'm sorry, Judge. I don't mean to interrupt you. Go ahead. What it means is what's said in Count 20, or excuse me, Instruction 20. Also Count 20, I guess, but Instruction 20. And if Instruction 20 included a knowledge requirement for piece 3, for third prong in 20, it would be okay, right? If it said that he, knowingly, in the wake of Rulon, I would say no, Judge. I would say it has to say that he knew the prescription was not authorized. That's what the Supreme Court said. That's what I say it needs to say. That's what Count 2 says it needs to say. Count 2, in the Tenth Circuit, disagreed completely with the government's position. They said it's not enough to find that he acted knowingly without a legitimate purpose, knowingly outside the usual course. Count 2 says none of that's enough because it's not a finding that he had no belief that he was unauthorized to do it under the law. That's what Count 2 says. So what they're saying is that the Tenth Circuit is wrong. I think they're right. But regardless of that, the instructions in this case are worse because there is what Instruction 20 says is unlawful distribution happens if he's outside the bounds of practice, period. Even if he thinks he's in within them, it doesn't matter. It's unlawful distribution if he's outside the bounds of practice. So what Count 2 says is, well, if he's intending to act with an unlawful distribution, we know he distributed. We know it was outside the bounds of practice. There is no way to suggest that any average jury is somehow going to torture this out to come up with a government's theory. They're going to read and say 20 defines it. If the expert says he's outside, who cares what Smithers says? They could have believed every word and convicted. And you can't salvage Count 2 because unlawful dispensing and distributing is defined without any reference to what he believes. No, it does because count because it requires him to do that intentionally, right? And so you to act intentionally is to act with knowledge. He must intend that it's unlawful distribution, but what defines unlawful distribution? He has to intend. It doesn't make sense. It's just incoherent. There's no way you can figure that a juror would figure this out. If there is some tortured argument here, I get the, I half understand the argument, but if the jury's told he's illegally distributing, if he goes outside what the expert says, the bounds of practice norms are, he's guilty. And then Count 2 says he's got to intend to act unlawfully. They've been, oh, 3 through 862 and 1, all of these say that he has to, I mean, intend to act unlawfully, right? I mean, this is intent to act unlawfully. Right, but you don't, but that only matters insofar as how unlawfully is defined and it's defined wrong in 20. That's all I can say about it. What I'll say about the preservation and the, first of all, he is specifically objected to the disjunctive conjunctive issue. That was what he objected to in his brief in Henson versus United States in the Tenth Circuit. That's exactly what Henson did and in Henson, the government ultimately conceded that the whole thing had to be reversed in light of Count 2. So it is enough. Joseph is the Supreme Court case where Justice Kagan says, when we announce a new rule that upsets old precedent, giving you a new theory, you have the right to bring it, even if you didn't say anything about it before. Hayward is a Rahif case where all they went to argue on appeal was sentencing and they were allowed to get relief under Rahif because the rules changed. The government said, there is a concerted effort by the government to avoid the we don't want to have to apply the correct standard for Dr. Smithers, but he deserves it. Dr. Smithers deserves to have that standard apply. You know, ultimately, what needs to happen is Dr. Smithers gave testimony about believing he was right and under Ruan, if he was sincere, he's not guilty. He deserves to have a jury that's told that decide. And there's no way that any of you here could possibly make that credibility determination without violating Sullivan and Netter and all of those cases that we've cited in our brief. Dr. Smithers is entitled to a trial under the correct standard. We ask that you reverse and remand so that we can get one. Thank you. Thank you so much. Thank you both counsel for your arguments. I'll ask the clerk to adjourn the court sine die and we'll come down and greet counsel. It's not a report stands adjourned sine die. God save the United States in this honor report.
judges: Roger L. Gregory, Julius N. Richardson, DeAndrea Gist Benjamin